IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PPL ENERGY SERVICES HOLDINGS, INC., : Plaintiff, : : v. : : ZOOT PROPERTIES, LLC, : Defendant. : | CIVIL ACTION NO. 05-6610 |
| PPL ENERGY SERVICES HOLDINGS, INC., : Plaintiff, : : v. : : ZOOT ENTERPRISES, INC., : Defendant. : | CIVIL ACTION NO. 05-6611 |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                                                                                             **August 24, 2006**

Presently before this Court are motions filed by the Defendants in two related cases. In *PPL Energy Services Holdings, Inc. v. Zoot Properties, LLC*, 05-cv-6610, Defendant, Zoot Properties filed a Motion to Transfer to the District of Montana (Doc. 2) and a Motion to Strike or Open a Confessed Judgment (Doc. 5). Plaintiff filed Responses in Opposition (Docs. 6&8). In *PPL Energy Services Holdings, Inc. v. Zoot Enterprises, Inc.*, 05-cv-6611, Defendant, Zoot Enterprises filed a Motion to Dismiss or in the Alterative to Transfer to the District of Montana (Doc. 3), and Plaintiff filed a Response in Opposition (Doc. 5). The Court held oral argument on these Motions on Thursday, March 2, 2006. For the reasons set forth below, the Court will deny both Motions to Transfer, deny Zoot Properties's Motion to Strike, grant Zoot Properties's Motion to Open the Confessed Judgment, and deny Zoot Enterprises's Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, PPL Energy Service Holdings, Inc., ("PPL"), headquartered in Allentown Pennsylvania, sells and installs energy generating facilities to public and private sector clients. In September 2000, PPL entered into a distributor agreement with FuelCell Energy, Inc. ("FCE") in which PPL agreed to distribute FCE's molten carbonate fuel cell technology ("Fuel Cells"). Defendant, Zoot Properties, LLC ("Zoot Properties") is the owner of a recently-constructed high-tech, high security facility located in Bozeman, Montana (the "Property"). The sole tenant of the Property is Zoot Enterprises, Inc. ("Zoot Enterprises"), a privately-held Montana corporation that specializes in developing customized instant credit decision software products and services for large financial institutions. In October 2001, PPL agreed to purchase six Fuel Cells from FCE. Two of the Fuel Cells are the subject of this case.

During 2000, Zoot Properties began planning the construction of the Property. As part of the planning process, Zoot Properties set out to design and install a redundant electrical system for the Property. Zoot Properties decided on molten fuel cell technology to power the Property, and investigated the possibility of purchasing two Fuel Cells from FCE. Representatives from Zoot Properties met with those from FCE and PPL. According to Zoot Properties, all companies understood that its electrical system would: (1) provide grid independence, (2) have "restacking intervals" of approximately three years, and (3) operate in Zoot Properties unique environment. After a number of design sessions, Zoot Properties moved forward with the integration of the Fuel Cell technology into the Property.

On October 31, 2002, PPL and Zoot Properties entered into an agreement (the "Purchase Agreement") for the purchase, design, financing and installation of two Fuel Cells (the "Fuel Cell

Project"). The parties estimated the cost of the Fuel Cell Project to be $2,429,800.00. Zoot Properties funded the Fuel Cell Project, in part, by a grant from the United States Department of Energy in the amount $1,410,000.00. It funded the remaining portion through a loan agreement between Zoot Properties and PPL, dated July 19, 2002 (the "Loan Agreement"). The Loan Agreement contained both a choice-of-law and a forum selection clause, which designated that all lawsuits be filed in Pennsylvania and that Pennsylvania law govern those disputes. In connection with the Loan Agreement, Zoot Enterprises agreed to act as a guarantor to Zoot Properties's obligations under the Loan Agreement (the "Guaranty Agreement"). The Guaranty Agreement also contained a Pennsylvania choice-of-law provision.

Zoot Properties executed a series of five Notes to facilitate the Fuel Cell Project's financing. The Notes were all payable in Pennsylvania and all contained confession of judgment clauses. The Notes represented money that PPL advanced to Zoot Properties throughout the Fuel Cell Project, totaling $1,164,000.00. The final Note, executed on February 1, 2005, is the subject of the confessed judgement action. Zoot Properties made all scheduled payments until August 2005.

Zoot Properties accepted delivery of the Fuel Cells in June of 2003. In fact, PPL claims that Zoot Properties executed a Certificate of Substantial Completion and Final Acceptance on October 28, 2003. However, Zoot Properties alleges that it had problems with the Fuel Cells immediately. The parties attempted to informally resolve their dispute, and on August 19, 2005, they entered into a Tolling and Confidentiality Agreement (the "Tolling Agreement") that suspended Zoot Properties's obligations under the Notes. The Tolling Agreement also extended the statue of laminations period to November 15, 2005. The parties began to negotiate a settlement to the dispute.

Despite the negotiation efforts, the parties came to an impasse in November 2005. On November 14, 2005, Zoot Properties and Zoot Enterprises filed an action in the District of Montana for recision of the Purchase Agreement and damages against both PPL and FCE. The action also seeks to relieve both Zoot entities of their obligations under the Loan Agreement and the Guaranty Agreement. On November 16, 2005, PPL notified Zoot Properties that it was in default of the Loan Agreement and the Notes. When Zoot Properties failed to make its payment within the ten (10) day cure period, PPL filed two actions in the Court of Common Pleas for Lehigh County. The first action was for a confession of judgment against Zoot Properties under the Notes, *PPL Energy Service Holdings, Inc., v. Zoot Properties, LLC*, 05-6610 (the "Confession Action"). In the Confession Action, the Common Pleas Court entered a judgment of $1,130,936.84. In the second suit, PPL sued Zoot Enterprises under the Guaranty Agreement, *PPL Energy Service Holdings, Inc., v. Zoot Enterprises, Inc.*, 05-6611 (the "Guaranty Agreement"). Both actions were removed to this Court. Subsequently, Defendants moved to transfer both actions to the District of Montana. Zoot Properties also moved to have the Confession Judgement stricken or, in the alternative, opened. Zoot Enterprises moved to have the Guaranty Action dismissed as a compulsory counterclaim to the Montana Action.

## II. DISCUSSION

**A. The Zoot Defendants' Motions to Transfer to the District of Montana**

Here, the Zoot Defendants move to transfer both actions to the District of Montana. The Zoot Defendants make two arguments. Primarily, they reason that the "first-filed rule" mandates transfer to the District of Montana, because the Montana action was first in time. (Defs.' Trans. Mem. at 7-9.) Alternatively, they argue that transfer is proper under § 1404(a). (*See* Defs.' Trans.

Mem. at 9-12; Defs.' Dismiss Mem. at14.)  PPL disagrees, contending § 1404 transfer is improper because there is no procedure for entering a confession of judgment in Montana and the choice of forum clause requires litigation in the Eastern District of Pennsylvania. (Pl.'s Trans. Mem. at 15-17.) In response to the first-file rule argument, PPL contends that the Court should ignore the rule because Defendants' filing of the Montana action was in bad faith as they had already agreed to litigate in Pennsylvania.  *Id.* at 23-26.  In evaluating the merits of the Zoot Defendants' Motion to Transfer, the Court will examine whether the first-filed rule applies to this case and whether transfer would be appropriate to the District of Montana.

**1. The First-Filed Rule**

The first-filed rule holds that in cases of federal concurrent jurisdiction, if the parties in the case are the same, the court of the first filing must decide the controversy.  *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988)).  The rule enforces a policy of comity that counsels trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases in different federal district courts.  *Id.*  That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping.  District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.  *Id.* at 972.  Although exceptions to the rule are rare, courts in this district have recognized that the first-filed rule is not to be mechanically applied.  *See, e.g., FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 749 (E.D. Pa. 2005) (refusing to apply the first-filed rule after a finding of forum shopping and anticipatory filing); *see also IMS Health, Inc. v. Vality Tech., Inc.*, 59 F. Supp. 2d 454, 465 (E.D. Pa. 1999) (following the first-filed rule only after an analysis of the bad faith exceptions).  Bad faith and

forum shopping have always been regarded as proper bases for departing from the rule. *EEOC*, 850 F.2d at 976. Similarly, courts have rejected the rule when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum. *Id.* at 976-77.

In this case, the Court will exercise its discretion and decline to apply the first-filed rule because it is clear that the Defendants filed the Montana action to avoid litigating in the Eastern District of Pennsylvania. Both parties agree that Montan law does not provide a means for entering a judgment based on a confession of judgment, while Pennsylvania law does allow confessed judgments. Obviously a jurisdiction that does not recognize confessed judgments is preferable to the Defendants. While the Defendants may wish to take advantage of creative litigation strategies, this is the exact type of blatant forum shopping that the Court of Appeals sought to prevent in *EEOC*. *See EEOC*, 850 F.3d at 978. In fact, many of the same inequities that the *EEOC* Court reasoned for ignoring the first-filed rule are present in this case. The timing of the Montana action indicates Defendants' attempt to avoid litigation in Pennsylvania. Moreover, if the Court were to ignore the equitable considerations of the first-filed rule and adopt Defendants' position, such a decision would have the effect of undermining the Pennsylvania law governing confessed judgments and further encourage forum shopping. The first-filed rule is not intended to "improperly subordinate" the laws of one jurisdiction in favor of the laws of another jurisdiction. *See EEOC*, 850 F.3d at 978. Therefore, the Court will not apply the first-filed rule to the present case.

**2. Section 1404 Transfer**

Having determined that the first-filed rule does not apply in this case, the Court will now consider the Defendants' Motion to Transfer using the traditional § 1404 factors. Even if venue is

proper, a district court "may transfer any civil action to any other district where it might have been brought . . . for the convenience of the parties and witnesses" or "in the interest of justice."  28 U.S.C. § 1404(a).  Section 1404(a) places discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The district court, using its discretion, can dismiss or transfer an action in favor of another jurisdiction where trial will best serve the convenience of the parties and ends of justice.

In deciding motions to transfer, the Court must first determine whether the proposed alternative forum is a proper venue.  *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988).  Once appropriateness of the alternative forum has been established, the defendant has the burden of convincing the court to exercise its broad discretion and transfer the action. *Id.*  If an alternative forum exists, the Court then considers several private interest factors as well as public interest factors.  *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947).  The private interest factors for the Court to consider include: (1) the Plaintiff's forum preference; (2) the Defendant's forum preference; (3) the location where the events occurred and claims arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Id*. at 507.  The public interest factors to be considered include: (1) the relative congestion and burden of the courts in the two fora; (2) the relative ability of the two fora to resolve the case more expeditiously and inexpensively; (3) the interest of the community at-large, including the interest of a potential jury that would be required to resolve a case that has no relation to its community, and the interest of the communities in having controversies resolved where they arise; and (4) the familiarity of the court

with the state law of a foreign state and appropriateness of trying a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court untangle problems in conflict of law, and in law foreign to itself. *Id*. at 508-09. When balancing the case-specific factors under § 1404(a), the presence of a forum selection clause can be a significant factor that figures centrally in the district court's calculus. *Stewart*, 487 U.S. at 30. Such a clause is not dispositive though. *Id*. Section 1404(a) requires that a district court consider all public and private interest factors and not solely the "factors . . . that bear solely on the parties' private ordering of their affairs." *Id*.

**a. The Forum Selection Clause**

Initially, PPL points to the forum selection clause in both agreements as a reason to deny the Zoot Defendants' Motions to Transfer. (Pl.'s Trans. Mem. at 10-15.) PPL submits that the choice of forum clauses in the Loan Agreement and the Guaranty Agreement are valid and enforceable under principles of Pennsylvania contract law and they apply to "any legal action or proceeding brought by either party against the other party." (Pl.'s Trans. Mem. Ex. C at ¶ 17.) PPL further contends that the Loan Agreement's choice of forum clause extends to the Notes because the Loan Agreement is defined to include any security instruments drawn in connection with the loan. *Id.* at ¶ 1. Consequently, both actions should be litigated in this Court. The Court agrees that the parties intended for the disputes arising out of this transaction to be filed in the Eastern District of Pennsylvania. Therefore, the remaining issue is what effect, if any, should the Court give to that choice.

When parties voluntarily agree to submit to suit in a given venue, the court will generally not disturb that choice. *See The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972) ("the forum

selection clause should control absent a strong showing that it should be set aside"). A forum selection clause is presumptively valid unless the party objecting to its enforcement establishes that: (1) it is the result of fraud or overreaching, (2) enforcement would violate a strong public policy of the forum, or (3) enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir. 1983). None of those circumstances exist in this case. The Court will presume that Forum Selection Clauses are valid because Zoot offers *no evidence* to prove that the clause at issue in this case may be invalid. Zoot Properties and Zoot Enterprises are sophisticated parties that entered into a valid agreement to litigate in the Eastern District of Pennsylvania. The Zoot Defendants have offered the Court no evidence of fraud, undue influence or any other defense to contract formation. There is no credible evidence that litigation in this forum would violate public policy or would be unreasonable. Consequently, the Court will not void the choice of forum clause.

**b. Additional § 1404(a) Factors**

Having determined that the forum selection clauses are valid, the Court now turns to the issue of which forum is more convenient to litigate the instant case. In support of their Motions to Transfer, the Zoot Defendants reason that the private factors are satisfied because they chose to file their action in the District of Montana and that many of the parties and evidence are located in Montana. (Defs.' Trans. Mem. 10-11; Def.'s Mot. to Dismiss Mem. at 11-12.) The Zoot Defendants submit that the public factors support them as well because many of the complex issues involve Montana law and that any judgment entered in the Eastern District of Pennsylvania, will have to be transferred to the District of Montana for collection. (Defs.' Trans. Mem. at 11-12; Defs.' Dismiss

Mem. at 13-14.) PPL argues transfer is improper because § 1404 only allows for a transfer to a venue where an action might have been brought. (Pl.'s Trans. Mem. at 15-16.) PPL reasons that the Court cannot transfer this case because there is no procedure for entering a judgment based on a confession of judgment in the District of Montana. *Id.* PPL also contends the public and private interest factors also require the Court to deny transfer. *Id.* at 16-22.

The Court agrees with PPL that the Confession Action could not be brought in the District of Montana, making transfer unavailable. Moreover, neither the private interest factors nor the public interest factors support the Zoot Defendants' position that the Eastern District of Pennsylvania is sufficiently inconvenient to justify granting their Motion to Transfer. The private factors are of no assistance to the Zoot Defendants. The Court has already determined that the parties have chosen the Eastern District of Pennsylvania as the forum for this dispute. Many of the witnesses and evidence are actually in Pennsylvania and the dispute involves both a contract (the Loan Agreement) and negotiable instrument (the Note) executed in Pennsylvania, pursuant to Pennsylvania law. Furthermore, any judgment this Court enters can be enforced in Montana. *See* Uniform Enforcement of Foreign Judgments Act, MONT. CODE ANN. §§ 25-9-501 - 508 (LEXIS through 2005 Spec. Sess.).

The public interest factors do not support the Zoot Defendants either. The Zoot Defendants offer no evidence that the District of Montana is less congested or better able to handle this case than this Court. Regarding the interest of the community, having determined that Pennsylvania law applies to this case, the Court reasons that Pennsylvania would have a greater interest in applying its own law than would Montana. Additionally, the District of Montana is less familiar than this Court is with Pennsylvania law. In light of the public and private interest analysis, the Court denies Zoot Defendants' Motion to Transfer.

**B. Zoot Properties's Motion to Strike or Open the Confessed Judgment**

Next Zoot Properties asks the Court to strike, or in the alternative, open the confessed judgment entered by the Court of Common Pleas for Lehigh County in the Confession Action. (Def.'s Conf. Mem. at 13.)  Under Pennsylvania law, a party seeking relief from a confessed judgment must file a Petition to Strike Off or Open Judgment.  PA. R. CIV. P. 2959.  Because the Federal Rules of Civil Procedure do not provide for a similar process to challenge judgments entered by confession, such challenges are to be made through FED. R. CIV. P. 60(b).  *See FDIC v. Deglau*, 207 F.3d 153, 161 (3d Cir. 2000) (holding that motions to open confessed judgments are procedurally governed by Rule 60 of the Federal Rules of Civil Procedure).  Rule 60(b) provides that "on motion and upon such terms as are just, the court may relieve a party or a party's representative from a final judgment, order, or procedure." *Id.* at 162.  However, state law governs the substantive aspects of motions to open or strike confessed judgments. *Id*. at 166.

**1. Choice of Law Analysis**

Similar to their quarrel over venue, the parties require that the Court decide which forum's law applies to this action as well.  In a diversity action, a district court must apply the choice of law rules of the state wherein the court resides, here Pennsylvania, to determine which forum's law should govern the claims at issue. *Schum v. Bailey*, 578 F.2d 493, 495 (3d Cir. 1978) (citing *Klaxson Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In Pennsylvania, the first question to be answered in addressing a potential conflict of laws dispute is whether the parties have chosen the relevant law. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999).  If the parties have chosen a forum, it is well established that Pennsylvania courts will generally enforce their choice of law. *See, e.g., Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994)

(citing *Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. 1989), *appeal denied*, 569 A.2d 1369 (Pa. 1990)).

According to PPL, the Court should apply Pennsylvania law because the choice-of-law clause in the Loan Agreement is incorporated by reference into the Note. (Pl.'s Conf. Mem. at 9.) As further detailed below, in a motion to strike the only evidence properly before the Court is the record of the confessed judgment action. The Loan Agreement was not part of that record and the Note itself did not contain a choice-of-law clause. Consequently, the Court finds that the Loan Agreement provisions cannot resolve the conflict of laws issue.

Having found no agreement between the parties to apply either forum's laws, the Court must turn to the traditional choice of law analysis. District courts in Pennsylvania apply a two-part analysis to resolve choice of law questions. First, the court must determine whether a true conflict exists. Second, if such a conflict is found, "the court [must] determine[] which state has the greater interest in the application of its law." *Lejeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) (citation omitted). This analysis involves looking at each state's contact with the claims at issue, "the contacts being relevant only if they relate to the policies and interest underlying the particular issue before the court." *Id.* at 1072 (quoting *Cipolla v. Shaposka*, 267 A. 2d 854, 856 (Pa. 1970)). Both parties agree that there is a true conflict between Montana and Pennsylvania law on the issue of confessed judgments. (*See* Def.'s Conf. Mem. at 17; Pl.'s Conf. Mem. at 7.) Regarding the forum with the greater interest, the Court finds that the choice of law analysis favors the application of Pennsylvania law. The Note was executed in favor of a Pennsylvania resident (PPL) and was due and payable in Pennsylvania. The confessed judgment was entered in Pennsylvania pursuant to a Pennsylvania Rule of Civil Procedure. While Montana may (as Zoot Properties argues)

have some connection to the parties' transaction, the gravity of *this* action is based off of the Note, and nothing else. It is for that reason that the Court will apply Pennsylvania law. Zoot Properties's arguments that rely on Montana law are now moot.

**2. Zoot Properties's Motion to Strike**

Zoot Properties raises many arguments in support of its Motion to Strike. Primarily, Zoot Properties claims that PPL failed to comply with the Warrant of Attorney when it confessed judgment prior to an event of default. (Def.'s Conf. Mem. at 20-21.) Defendants reason that Zoot Properties did not default because the Note under which the Common Pleas Court entered the confessed judgement indicated that default occurred if Zoot Properties failed to make payment ten (10) days after written notice. However, the Loan Agreement provided for a thirty (30) day default period. Defendants argue that any ambiguities should be construed against PPL, which would then require the judgment be stricken.

A petition to strike a judgment is a common law proceeding that operates as a demurrer to the record. *Resolution Trust Corp. v. Copley Qu-Wayne Assocs.*, 683 A.2d 269, 273 (Pa. 1996). In Pennsylvania, a confessed judgment should only be stricken where there is a defect apparent on the face of the record upon which the judgement was entered. *Franklin Interiors v. Wall of Frame Mgmt. Co. Inc.*, 511 A.2d 761, 762 (Pa. 1986). When considering the merits of a petition to strike, the Court must limit its review to only the record as filed by the party in whose favor the warrant is given. *Resolution Trust*, 683 A.2d. at 273. Matters outside the record will not be considered. *Id.* If the record is self-sustaining, the judgment will not be stricken. *Franklin Interiors*, 511 A.2d at 762. When a proceeding to confess judgment is instituted by complaint, the complaint and confession of judgment clause must be read together to determine whether there are defects on the

13

face of the record.  *Manor Bldg. Corp. v. Manor Complex Ass'n*, 645 A.2d 843, 846 (Pa. Super. Ct. 1994) (citing *Parliament Indus., Inc. v. Wm. H. Vaughan & Co.*, 459 A.2d 720 (Pa. 1983)).  The face of the record must be taken as true.  *Id.*  However, if the truth of the factual averments contained in the record are disputed, then the remedy is a proceeding to open the judgment and not to strike.  *Resolution Trust*, 683 A.2d. at 273.

The Court will deny the Motion to Strike.  As noted above, Pennsylvania courts should only look to the record when considering a motion to strike a confess judgment.  Here the thirty (30) day default provision is not part of the record and therefore cannot be considered by this Court.  The record consists of the Common Pleas Court Complaint, the Note and the Notice of Default.  When considering only those documents, it is clear that Zoot Properties had only ten (10) days to cure its default.  It did not cure and is liable for breach of the Note; Zoot Enterprises is also liable as a guarantor.  The Complaint indicated as much, and as a result, the Common Pleas Court entered the judgment.  There is nothing ambiguous about those findings.  Zoot Properties's motion is denied.[1]

### 3. Zoot Properties's Motion to Open

Alternatively, Zoot Properties moves to open the Confessed Judgment because, it claims, it has a number meritorious defenses.  A motion to open is to be granted "if evidence is produced which in a jury trial would require the issues to be submitted to the jury." *FDIC v. Deglau*, 207 F.3d 153, 168 (3d Cir. 2000) (quoting PA. R. C.P. 2959(e)).  Accordingly, motions to open are reviewed in the same way as a directed verdict.  *Id.* (citing *Suburban Mechanical Contractors, Inc. v. Leo*,

---

[1] Zoot Properties's other arguments are equally without merit.  In one argument Zoot Properties submits that the Court should strike the judgment because it does not contain exact address for Zoot Properties. (Def.'s Conf. Mem. at 22.)  This argument is frivolous, as the one word difference amounts to a *de minimus* error that did not prejudice any of the parties in this case.  Zoot Properties also indicates that the Court should strike the judgment as excessive. (Def.'s Conf. Mem. at 22-23.)  The Court will reject this reasoning as well because it relates to a factual dispute, and therefore is not the proper subject of a motion to strike.  *Resolution Trust*, 683 A 2d. at 273.

502 A.2d 230, 232 (Pa. Super. Ct. 1985)). The district court is to view all the evidence in the light most favorable to the petitioner and to accept as true all evidence and proper inferences from it that support the defense while rejecting adverse allegations of the party obtaining the judgment. *Id.* However, mere averments of meritorious defenses are insufficient. *West Chester Plaza Associates v. Chester Engineers*, 465 A.2d 1297, 1300 (Pa. Super. Ct. 1983). The Pennsylvania rules regarding challenges to confessed judgment require that the petitioner offer "clear, direct, precise and believable evidence" of his meritorious defenses. *Deglau*, 207 F.3d at 168.

Upon viewing the facts in the light most favorable to Zoot Properties, the Court finds that there are sufficient facts by which a jury could conclude that it has defenses to the confession of judgment. There are material issues of fact regarding whether PPL fulfilled all of its obligations during the Fuel Cell Project or breached the agreements with Zoot Properties. Furthermore, Zoot Properties has presented evidence that Fuel Cells did not function as planned. These facts could state a claim for recision or for negligent misrepresentation. Without opining on Defendant's likelihood to prevail at trial, the Court will grant the Motion to Open because Zoot Properties has meet its burden regarding the presentation of evidence that may prove a meritorious defense.

**C. Zoot Enterprises's Motion to Dismiss the Guaranty Action**

Finally, the Court considers Zoot Enterprises's Motion to Dismiss. Zoot Enterprises argues that the Guaranty Action is a compulsory counter claim because both it and the Montana Action arise out of the events leading up to the Fuel Cell Project. (Def.'s Mot. to Dismiss Mem. at 8.) Furthermore, if Defendants prevail in the Montana Action, Zoot Enterprises's liability as a guarantor is extinguished. *Id.* FED. R. CIV. P 13(a) provides that a pleading shall state as a counterclaim any claim that at the time of pleading arises out of the transaction or occurrence of the opposing party's

15

claim. Stated another way, Rule 13(a) makes counterclaims that bear a logical relationship to an opposing party's claim, compulsory. *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). When a claim asserted in one action is determined to be a compulsory counterclaim in another action, the district court may dismiss the later action. *See Id.* However, the first-filed rule and the compulsory counterclaim principles are not distinct, and the existence of a separate suit does not guarantee dismissal. *See Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003). The Court will deny this Motion to Dismiss for the same reasons as it denied the Motion to Transfer. If the Court were to dismiss the Guaranty Action, it would reward Defendants' refusal to honor their agreement to litigate in this district. Neither the first-filed rule nor Fed. R. Civ. P. 13(a) should allow a party to avoid a contractual duty. For both these reasons, and the reasons in the discussion on the Motion to Transfer, the Court will deny the Motion to Dismiss.

### III. CONCLUSION

Based on the foregoing, the Court will deny the Zoot Defendants' Motions to Transfer, deny Zoot Properties's Motion to Strike and deny Zoot Enterprises's Motion to Dismiss. The Court will grant Zoot Properties's Motion to Open the Confessed Judgment. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PPL ENERGY SERVICES HOLDINGS, INC.,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | NO. 05-6610 |
| v. | : | |
| | : | |
| **ZOOT PROPERTIES, LLC,** | : | |
| Defendant. | : | |
| **PPL ENERGY SERVICES HOLDINGS, INC.,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 05-6611 |
| | : | |
| **ZOOT ENTERPRISES, INC.,** | : | |
| Defendant. | : | |

### ORDER

**AND NOW**, on this 24th day of August, 2006, upon consideration of the motions and responses filed in *PPL Energy Services Holdings, Inc. v. Zoot Properties, LLC*, 05-cv-6610, Defendant, Zoot Properties's Motion to Transfer to the District of Montana (Doc. 2) and a Motion to Strike or Open a Confessed Judgment (Doc. 5), and Plaintiff's Responses in Opposition (Docs. 6&8), **IT IS HEREBY ORDERED** as follows:

1. Zoot Properties's Motion to Transfer is **DENIED**,

2. Zoot Properties's Motion to Strike the Confessed Judgment is **DENIED**, and

3. Zoot Properties's Motion to Open the Confessed Judgment is **GRANTED**.

**IT IS FURTHER ORDERED**, upon consideration of the motions and responses filed in *PPL Energy Services Holdings, Inc. v. Zoot Enterprises, Inc.*, 05-cv-6611, Defendant, Zoot

Enterprises filed a Motion to Dismiss or in the Alterative to Transfer to the District of Montana (Doc. 3), and Plaintiff filed a Response in Opposition (Doc. 5) that:

    1.       Zoot Enterprises's Motion to Transfer is **DENIED**, and

    2.       Zoot Enterprises's Motion to Dismiss is **DENIED**.

                                      **BY THE COURT:**

                                      /S/ Petrese B. Tucker

                                      _____
                                      **Hon. Petrese B. Tucker, U.S.D.J.**